# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

VS.

MARCUS TYRONE WILLIAMS,

    Defendant.

Civ. No. 04-1196-T/An
Crim. No. 03-10058-01-T

---

## ORDER DENYING MOTION TO PROCEED *IN FORMA PAUPERIS* AS MOOT
## ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
## ORDER DENYING CERTIFICATE OF APPEALABILITY
## AND
## ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

---

Defendant Marcus Tyrone Williams, Bureau of Prisons inmate registration number 18715-076, an inmate at the Federal Correctional Institution in Memphis, Tennessee, filed a *pro se* motion pursuant to 28 U.S.C. § 2255 on August 19, 2004 along with a motion to proceed *in forma pauperis*. There is no filing fee in § 2255 cases and no need for appointment of counsel in this case; therefore, the motion to proceed *in forma pauperis* is DENIED as moot.

On July 21, 2003, a federal grand jury returned a three-count indictment against Williams and a codefendant, Anthony Jones. The first count charged both defendants, aided and abetted by each other, with armed bank robbery in connection with the robbery of the

This document entered on the docket sheet in compliance
with Rule 55 and/or 32(b) FRCrP on __8/10/05__

People's Bank of Commerce in Trenton, Tennessee on April 25, 2003, in violation of 18

U.S.C. § 2113(a) & (d).  The second count charged Williams with using, carrying, and

brandishing a firearm during and in relation to the April 25, 2003 bank robbery, in violation

of 18 U.S.C. § 924(c).  The third count charged Jones with a violation of 18 U.S.C. § 924(c)

in connection with the bank robbery.

On December 19, 2003, pursuant to a written plea agreement, Williams entered a plea

of guilty to the first count of the indictment.  The plea agreement contained the following

provision:

> The defendant is aware that Title 18 United States Code, section 3742 affords
> him the right to appeal the sentence imposed in this case.  Acknowledging
> this, in exchange for the undertakings made by the United States in this plea
> agreement, the defendant hereby waives all rights conferred by Section 3742
> to appeal any sentence imposed, including any restitution order, or to appeal
> the manner in which the sentence was imposed, unless the sentence exceeds
> the maximum permitted by statute or is the result of an upward departure from
> the guidelines that the court establishes at sentencing.  The defendant further
> understands that nothing in this agreement shall affect the government's right
> and/or duty to appeal as set forth in Title 18, United States Code, Section
> 3742(b).  However, if the United States appeals the defendant's sentence
> pursuant to Section 3742(b), the defendant shall be released from the above
> waiver of appellate rights.   By signing this agreement, the defendant
> acknowledges that he has discussed the appeal waiver set forth in this
> agreement with his/her attorney. The defendant further agrees, together with
> the United States, to request that the district court enter a specific finding that
> the defendant's waiver of his right to appeal the sentence to be imposed in this
> case was knowing and voluntary.

Plea Agreement, ¶ 5.  The Court issued an order accepting the guilty plea on December 23,

2003. The Court conducted a sentencing hearing on April 1, 2004, at which time Williams

was sentenced to 114 months imprisonment, to be followed by a three-year period of

supervised release.[1]  The Court also imposed restitution in the amount of $3,318 jointly and severally with the codefendant.  Judgment was entered on April 6, 2004.  Williams did not take a direct appeal.

Williams has now filed a § 2255 motion in which he raises the following issues:

1.   His guilty plea was not intelligent and voluntary because he was not aware that, under the sentencing guidelines, he could receive a weapon enhancement and his juvenile convictions would be considered in calculating his criminal history score;

2.   The consideration of his juvenile conviction in his criminal history score constituted a violation of the protection against double jeopardy; and

3.   He was denied the right to take a direct appeal.

For the sake of clarity, the Court will first address the third issue.

In his third claim for relief, Williams asserts that he was denied the right to take a direct appeal.  As previously noted, see *supra* p. 2, the plea agreement contained an appeal waiver provision.  In his motion, Williams acknowledged the existence of the provision, but states that it was "inhumane" for his attorney to agree to it.

The Sixth Circuit generally enforces appeal waiver provisions, see, e.g., United States v. Fleming, 239 F.3d 761, 763-64 (6th Cir. 2001), and plea provisions waiving the right to

---

[1]  Pursuant to § 2B3.1(a) of the United States Sentencing Guidelines ("U.S.S.G."), the base offense level for robbery is 20.  Williams received a two-point enhancement, pursuant to U.S.S.G. § 2B3.1(b)(1), because the property of a financial institution was taken.  He received a five-level increase, pursuant to U.S.S.G. § 2B3.1(b)(2)(C), because a firearm was brandished, and a one-leave increase, pursuant to U.S.S.G. § 2B3.1(b)(7)(B), because the intended loss exceeded $10,000.  Because Williams falsely denied having a weapon at the change of plea hearing, he was not awarded any reduction for acceptance of responsibility, resulting in a total offense level of 28. In light of his criminal history category of III, the guidelines called for a sentencing range from 97-121 months.

file a § 2255 motion, <u>Davila v. United States</u>, 258 F.3d 448 (6th Cir. 2001); <u>Watson v. United States</u>, 165 F.3d 486, 488-89 (6th Cir. 1999). However, in order to dismiss the defendant's motion on this basis, the Court must be satisfied that his waiver of his rights was intelligent and voluntary. <u>See, e.g.</u>, <u>Watson</u>, 165 F.3d at 489 (determining, on the basis of the change of plea hearing, that "Watson knowingly, intelligently, and voluntarily waived his right to collaterally attack the plea"); <u>see also</u> <u>United States v. Murdock</u>, 398 F.3d 491, 496-99 (6th Cir. 2005) (district court's failure to advise defendant of Rule 11 waiver provision in plea agreement was plain error that precluded dismissal of appeal).

At the change of plea hearing, the Court advised Williams of the existence of the appeal waiver provision and ensured that he understood what it meant:

> **THE COURT:**    Now, there's another reference in here to giving up your right to appeal your sentence in this case. Now, you have the right to appeal any sentence that the court imposes unless you give up that right. In paragraph 5 of this agreement, it provides that you waive your right to appeal this sentence unless the court exceeds the statutory maximum. If I give you more time than the statute allows, you can appeal that. Or if I depart from the guideline range and give you more time than the guidelines suggest, then you can appeal that sentence. Other than that though, you can't appeal the sentence in this case.
> Now, there's one exception. If the government appeals the defendant's sentence, then you're released from this waiver, and then you'll have the right to appeal on any issues you want to appeal.
> Do you understand, Mr. Williams, that you're giving up your right to appeal this sentence unless the court gives you more time than the statute allows, more time than the guidelines suggest, or if the government appeals. Then in those events, you can appeal. Otherwise, there won't be any appeal. Do you understand that?
>
> **DEFENDANT WILLIAMS:**    Yes. Excuse me for a second. I need to talk to my lawyer.

**THE COURT:**      Yes, sir.

(Discussion off the record between the defendant and Ms. Smothers)

**DEFENDANT WILLIAMS:**      I do, Your Honor.

**THE COURT:**      All right, sir.

. . . .

**THE COURT:**      Well, it appears that each defendant knowingly understands his rights.  He understands his right to appeal, and he knowingly waives that right with the exceptions just noted.

(12/19/03 Tr. at 12-14.)  The record indicates that Williams's waiver of his appellate rights was knowing and voluntary, Davila, 258 F.3d at 451-52; Fleming, 239 F.3d at 762-63, and Williams has not come forward with any persuasive argument why that waiver should not be given effect.

Accordingly, the defendant's third issue is without merit and does not entitle him to relief.

In his first claim for relief, Williams asserts that his conviction was obtained by a plea of guilty that was unlawfully induced or which was not intelligent and voluntary.  Although the defendant's explanation of this issue is not very clear, he seems to contend that he did not realize, at the time he entered into his guilty plea, that he would be subject to a weapon enhancement or that his criminal record would be considered in calculating his criminal history score.

As a preliminary matter, Williams's presentation of this issue does not comply with

Rule 2(b) of the Rules Governing § 2255 Proceedings, which requires, *inter alia*, that the motion "shall specify all the grounds for relief which are available to the movant and of which he has or, by the exercise of reasonable diligence, shall have knowledge and shall set forth in summary form the facts supporting each of the grounds thus specified."[2] Although the Sixth Circuit has not had occasion to address the pleading standards applicable to § 2255 motions, the Second Circuit has stated as follows:

> To warrant plenary presentation of evidence, the application must contain assertions of fact that a petitioner is in a position to establish by competent evidence. . . . Whether there is a genuine issue of material fact depends upon the sufficiency of those factual allegations. Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing.

United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987) (citations omitted); accord Taylor v. United States, 287 F.3d 658, 661 (7th Cir. 2002) (noting that, while notice pleading is the standard in ordinary civil litigation, "Rule 2(b) departs from Rule 8 [of the Federal Rules of Civil Procedure] by requiring some fact pleading"). Although Williams is apparently unhappy with the manner in which his sentence was calculated, he does not state that he was unaware of the application of the sentencing guidelines to his case and he does not explain his failure to file a motion to withdraw his guilty plea once he received the presentence report.

Williams did not file a motion to withdraw his guilty plea at any time prior to the entry of judgment. Moreover, Williams did not challenge the intelligence of his plea on

---

[2] The quotation is from the version of the Rule in effect when the § 2255 motion was filed.

direct appeal,[3] and a § 2255 motion is not a substitute for a direct appeal. Sunal v. Lange, 332 U.S. 174, 178 (1947). Generally, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." Bousley v. United States, 523 U.S. 614, 621 (1988). Because Williams did not raise this issue on direct appeal, even though he had all the information he now asserts in support of this motion, he has procedurally defaulted this claim. Id.; see also El-Nobani v. United States, 287 F.3d 417, 420 (6th Cir. 2002).

Although there are two exceptions to the procedural default rule, neither is applicable here. A defendant can overcome a procedural default if he demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously, Bousley, 523 U.S. at 622, or he establishes that a constitutional error "'has probably resulted in the conviction of one who is actually innocent.'" Id. at 623 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). In this case, Williams cannot demonstrate good cause for his failure to raise this issue on direct appeal, because he knew, as soon as the presentence report was issued, the sentence he was likely subject to and the means by which it was calculated. Moreover, Williams has presented no argument that he is actually innocent of the offense to which he entered a guilty plea.[4]

---

[3] Because this issue concerns the guilty plea, rather than the sentence imposed, the appeal waiver provision in the plea agreement would appear to be inapplicable.

[4] At the change of plea hearing, Williams admitted his guilt on the bank robbery charge, but he insisted that he was unarmed. After some discussion, Williams admitted that he possessed a razor that bank employees may have believed to be a firearm. (12/19/03 Tr. at 20-26.) The presentence report indicates that the bank employees would have testified that Williams had a "short" or a "sawed-off" shotgun. In addition, Bobby Wright, a driver for

Finally, on a substantive level, Williams's position simply makes no sense. At the change of plea hearing, Williams acknowledged that the statutory maximum penalty for the bank robbery charge was 25 years. (12/19/03 Tr. at 16.) The sentence he received was considerably less than the statutory maximum. If Williams went to trial and was convicted, he would have been sentenced in accordance with the sentencing guidelines, which included consideration of his criminal history. In addition, in light of the statements of the witnesses and the admission of his codefendant, Williams faced a substantial risk of conviction on the § 924(c) count, which would have subjected him to a five-year mandatory sentence consecutive to the sentence imposed on the bank robbery charge. By pleading guilty, even with the weapon enhancement, Williams received a less severe sentence than he could have received had he gone to trial and been convicted on both counts.[5]  Moreover, even if Williams went to trial and was convicted on the bank robbery charge and acquitted on the

---

the Coca-Cola Company, observed Williams leaving the bank with a sawed-off shotgun. The police officers who arrested the defendants did not recover a weapon. However, Jones, the codefendant, told investigating officers that Williams was armed. Williams gave a statement in which he said that the shotgun was a toy with black tape wrapped around it to make it appear real. The presentence report took the position that "there is overwhelming evidence in support of the position that Mr. Williams did in fact possess and brandish either a shotgun, or an object which was purposely intended to resemble a shotgun, during the instant offense," and, by falsely denying the same, Williams was not entitled to a reduction for acceptance of responsibility. Prior to the sentencing hearing, Williams, through counsel, filed a position paper in which he argued that he was entitled to the reduction for acceptance of responsibility because, at the time of his arrest, he freely admitted using an object that was altered to look like a gun. In his § 2255 motion, Williams objects to the firearm enhancement but does not address his previous admissions that, at the least, he used an object that was intended to look like a real gun. Williams's vague and conclusory statement is insufficient to permit a conclusion that he is arguing that he is actually innocent of the weapon enhancement.

[5]  If Williams were convicted after trial, the total offense level would be 23, see supra pp. 2-3 n.2, and, given his criminal history category of III, the guidelines call for a sentencing range of 70-87 months. The mandatory 60-month sentence for violating § 924(c) would then run consecutive to the sentence for the bank robbery, for a possible total sentence of 130-147 months.

weapon charge, he could still receive a firearm enhancement (albeit a slight less significant enhancement) based on his use of an object that was intended to look like a firearm.[6] Under these circumstances, Williams has failed to present any plausible argument that, if only he knew the manner in which his sentence would be calculated, he would not have entered a guilty plea.

For these reasons, Williams is not entitled to relief on his first claim.

Finally, Williams contends, in his second claim for relief, that consideration of his juvenile conviction in his criminal history score constituted a violation of the constitutional protection against double jeopardy. This issue falls squarely within the appeal waiver provision and, therefore, could not have been raised on direct appeal. However, because this is the type of claim that normally must be raised on direct appeal, relief is not available through a § 2255 motion. Grant v. United States, 72 F.3d 503, 505 (6th Cir. 1996); see also United States v. Lankford, Nos. 99-5870, 99-6075, 2000 WL 1175592, at *1 (6th Cir. Aug. 9, 2000) ("Technical violations of the federal sentencing guidelines will not warrant [§ 2255] relief."); United States v. Norfleet, No. 98-1311, 1999 WL 1281718, at *5 (6th Cir. Dec. 28, 1999) ("Normally, Norfleet could not obtain collateral review of sentencing guidelines errors."); Hunter v. United States, 160 F.3d 1109, 1114 (6th Cir. 1998) ("Relief

---

[6] As previously noted, Williams received a five-point enhancement because a firearm was brandished or possessed. U.S.S.G. § 2B3.1(b)(2)(C). Williams would be subject to a three-point enhancement for brandishing or possessing a dangerous weapon if the evidence showed that the gun was not real. See id. § 2B3.1(b)(2)(E); see also id. § 1B1.1 application note 1(D) ("dangerous weapon" includes use of an object in a manner that created the impression that the object was a dangerous weapon).

is not available in a section 2255 proceeding for a claim of nonconstitutional, sentencing-guideline error when that error was procedurally defaulted through the failure to bring a direct appeal."). Williams is not entitled to circumvent the appeal waiver provision by bringing claims that should have been raised on direct appeal in a § 2255 motion.

Moreover, the law is clear that enhancement of criminal history points for past convictions does not constitute double jeopardy because it enhances punishment for the present crime, not for past crimes. Witte v. United States, 515 U.S. 389 (1995); United States v. Taylor, 60 Fed. Appx. 566, 568 (6th Cir. Mar. 13, 2003); United States v. Gardner, 23 Fed. Appx. 482, 483 (6th Cir. Nov. 30, 2001).

Thus, defendant also is not entitled to relief on his second claim.

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see also Rule 4(b), Rules Governing § 2255 Proceedings. Therefore, the Court finds that a response is not required from the United States Attorney and that the motion may be resolved without an evidentiary hearing. United States v. Johnson, 327 U.S. 106, 111 (1946); Baker v. United States, 781 F.2d 85, 92 (6th Cir. 1986). Defendant's conviction and sentence are valid; therefore, his motion under § 2255 is DENIED.

Consideration must also be given to issues that may occur if the defendant files a notice of appeal. Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the

10

appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2255 movant may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court recently cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in Slack held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (quoting Barefoot, 463 U.S. at 893). Thus,

> [a] prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

Id. at 338 (quoting Barefoot, 463 U.S. at 893); see also id. at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA: "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[7]

In this case, the defendant's claim is clearly without merit for the reasons set forth previously and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the $255 appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the defendant must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting

---

[7] By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." 537 U.S. at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." Id.

affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the defendant must file his motion to proceed *in forma pauperis* in the appellate court. See Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal *in forma pauperis* is DENIED. Accordingly, if the defendant files a notice of appeal, he must also pay the full $255 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this ___8th___ day of August, 2005.


JAMES D. TODD
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 4 in case 1:04-CV-01196 was distributed by fax, mail, or direct printing on August 10, 2005 to the parties listed.

---

Marcus Tyrone Williams
18715-076
P.O. Box 34550
Memphis, TN 38138--055

Honorable James Todd
US DISTRICT COURT